# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Waldy J. Mondragon,<br>Petitioner<br>-vs-<br>Dennis R Smith,<br>Respondent. | CV-12-0817-PHX-ROS (JFM)<br><br>**Report & Recommendation On Petition<br>For Writ Of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Federal Correctional Institute in Phoenix, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on April 19, 2012 (Doc. 1). On August 9, 2012, Respondents filed their Response (Doc. 11). Petitioner has not replied.

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. CRIMINAL PROSECUTION BACKGROUND

**Criminal Convictions** - Prior to his federal prosecution, Petitioner was convicted in New Mexico state court of misdemeanor aggravated battery and an attempt to commit the same offense, in violation of N.M. Stat. Ann. § 30-3-5(B) (2004). (Exhibit 1, Attachment 5, Regional Director Response 7/18/12.) (Exhibits to the Response, Doc. 11, are referenced hereinafter as "Exhibit ___.")

That statute provides:

> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.

Petitioner was granted a deferred prosecution, which he eventually completed successfully, resulting in the dismissal of the case. (Exhibit 1, Attachment 5, Regional Director Response 7/18/12.)

**Federal Conviction** - On October 5, 2010, Petitioner was sentenced to 52 months in the Bureau of Prisons for maintaining a place for distribution and use of heroin. (Exhibit 1, Attach. 4, Computation Data.)

## B. SUBSTANCE ABUSE REHABILITATION PROGRAMS

On October 28, 2011 Petitioner began the BOP's residential Drug Abuse Program. (Exhibit 1, Attachment 1, "Drug PGMS"; Exhibit 1, Attachment 4, Response 7/18/12.)

## C. EARLY RELEASE PROCEEDINGS

**First Round of Administrative Procedures** - On or about March 31, 2011 (prior to beginning the Drug Abuse Program), Petitioner filed a Request (Exhibit 1, Attachment 2) for review of his eligibility for early release pursuant to 18 U.S.C. § 3621(e). That statute authorizes the BOP to reduce the sentence of "a prisoner convicted of a nonviolent offense [who] remains in custody after successfully completing a [substance abuse] treatment program." That request was denied on the basis that Petitioner had been convicted of aggravated assault. (Exhibit 1, Attachment 2 at 2.)

On May 23, 2011, Petitioner filed a Request for Administrative Remedy (Exhibit 1, Attachment 4), arguing that his New Mexico misdemeanor conviction for aggravated battery did not qualify as an aggravated assault under the FBI's violent crime index, because it is defined under New Mexico law as an offense that does not cause substantial

2

bodily harm. Petitioner argued that the FBI's violent crime index was controlling, citing *Torres v. Hood*, 2000 WL 1132112 (D.Or. 2000). This request was denied by Respondent on the basis that under 28 C.F.R. § 550.55(b)(iv), an inmate is not eligible for a reduction under § 3621(e) if conviction of a felony or misdemeanor aggravated assault, and that his New Mexico conviction qualified as such. (Exhibit 1, Attachment 4, Response 6/8/11.)

Petitioner then filed a Regional Administrative Appeal (Exhibit 1, Attachment 4), arguing that the courts have ruled that BOP must look to the offense of conviction and not the underlying facts in making its determinations on § 3621 eligibility. On August 31, 2011, the Regional Director rejected the appeal, finding that the New Mexico statute under which Petitioner was convicted was substantially similar to an identified offense under the FBI's Uniform Crime Reporting Program. (*Id.*)

Petitioner then filed a Central Office Administrative Remedy Appeal. (*Id.*) Petitioner again argued that because the New Mexico statute was premised on the absence of a likelihood of death or great bodily harm, it did not qualify as aggravated assault. On May 25, 2012, this appeal was also denied, with the National Inmate Appeals Administrator noting that the FBI's definition of aggravated assault was "the unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury."

**Second Round of Administrative Procedures** – On June 13, 2012, Petitioner again filed a Request for Administrative Remedy (Exhibit 1, Attachment 5). Petitioner argued that in the interim his New Mexico conviction had been expunged. On June 21, 2012, the Warden responded that the conviction had not been expunged, but was "deferred" and that it "remains in effect." (*Id.*)

On July 1, 2012, Petitioner filed a Regional Administrative Remedy Appeal (*id.*), which was denied on July 18, 2012 on the basis that his deferred sentence may have expired, but his conviction remained of record. (*Id.*)

/ /

**D. PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on April 19, 2012 (Doc. 1). Petitioner's Petition asserts a single ground for relief:

> Petitioner claims that the Federal Bureau of Prisons (BOP) wrongfully found him ineligible for early release based upon his previous conviction for misdemeanor aggravated battery, which it found constituted a crime of violence under 18 U.S.C. § 3621(e).

(Order 7/23/12, Doc. 7 at 2.)   Petitioner argues that the BOP has thus acted contrary to law, exceeding its statutory authority, and violating the Equal Protection Clause.

**Response** - On August 9, 2012, Respondent filed his Response (Doc. 11). Respondent argues that Petitioner's claims are without merit, both because he fails to make out an equal protection argument, and because the BOP has acted within its statutory authority.  Respondent further argues that this Court lacks jurisdiction to render the relief requested by Petitioner.

**Reply** – The Court's service Order provided that Petitioner could "file a reply within 30 days from the date of service of the Answer." (Order 7/23/12, Doc. 7 at 3.) That time has now passed and Petitioner has not replied.

### III. APPLICATION OF LAW TO FACTS

**A. JURISDICTION**

**APA Review Prohibited**- As an exception to the Government's sovereign immunity, Congress enacted the Judicial Review chapter of the Administrative Procedures Act, 5 U.S.C. § 701-706.  Section 702 of that act provides a right of judicial review to persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  However, the APA does not apply "to the extent that – (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Here, Petitioner challenges the rejection of his application for early release under

18 U.S.C. § 3621(e). That statute is part of Subchapter C, Chapter 229, Part II, of Title 18. Section 3625 is also part of that Subchapter C, and provides that the provisions of the APA "do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3615. "Accordingly, any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011).

**Review for Violation of Statute** − Although review of individualized decisions under § 3621 is not available, "judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority." *Reeb*, 636 F.3d at 1228. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) (recognizing the "'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim"); and *Leedom v. Kyne*, 358 U.S. 184, 190 (1958)("Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers").

Thus, Petitioner argues that he can maintain this action because the actions of the BOP have been contrary to statutory law and the Equal Protection Clause. The latter argument will be addressed hereinafter.

With regard to a statutory violation, Petitioner fails to suggest what statute or regulations has been violated.

BOP undoubtedly has power under 18 U.S.C. § 3621(e) to limit the early release program to "a prisoner convicted of a nonviolent offense." Moreover, it is not even mandated to release such prisoners, but "may" do so. Thus, the Ninth Circuit has held that the BOP had authority to include in its release determination not only the offense for which the prisoner was currently incarcerated, but prior convictions as well. *Jacks v. Crabtree*, 114 F.3d 983, 984-985 (9th Cir. 1997). *See also Lopez v. Davis*, 531 U.S. 230, 242 (2001) ("the Bureau need not blind itself to preconviction conduct that the agency

5

reasonably views as jeopardizing life and limb").

What Petitioner functionally argues is that the BOP has violated its own regulation, embodied in 28 C.F.R. § 550.55. In pertinent part, that regulation provides in subsection (b) that as "an exercise of the Director's discretion, the following categories of inmates are not eligible for early release:…(4) Inmates who have a prior felony or misdemeanor conviction for:…(iv) Aggravated assault." Subsection (b)(6) extends the exclusion to those "convicted of an attempt, conspiracy or other offense which involved" an excluding offense, such as aggravated assault.

To establish that he has not been convicted for aggravated assault (or attempted aggravated assault), Petitioner contends that BOP has adopted the FBI's Uniform Crime Reporting (UCR) definition of aggravated assault, which he contends does not square with his New Mexico prosecution.

**<u>Petitioner Not Convicted of  FBI's Aggravated Assault</u>** - Indeed, the definitions do not appear to square.

The Regional Director cited the definition from the "Uniform Crime Report, 2007." That Report provided:

> The FBI's Uniform Crime Reporting (UCR) Program defines aggravated assault as an unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury. The Program further specifies that this type of assault is usually accompanied by the use of a weapon or by other means likely to produce death or great bodily harm.

*See* http://www.fbi.gov/about-us/cjis/ucr/crime-in-the.u.s/2007, last accessed 6/20/13. To meet this definition, an offense must involve an intent to inflict "severe or aggravated bodily injury." Further, it must be accompanied by the use of a deadly weapon or other means of "death or great bodily harm." In contrast, the Report defined "simple assault" as: "Assaults and attempted assaults which are not of an aggravated nature and do not result in serious injury to the victim." (*Id.*)

The New Mexico statute provides three levels of the offense of "aggravated

6

battery."[1]  At its lowest level it requires only touching or force and an intent to caus some injury:

> Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.

N.M.Stat.Ann. § 30-3-5(A).[2]  That simple definition is far broader than the UCR's definition of "aggravated assault," which does not merely require intent "to injure," but requires intent to inflict "severe or aggravated bodily injury."

In contrast, the misdemeanor version, of which Petitioner was convicted, still requires no intent to inflict heightened injuries, although it does require some significant resulting injury, *i.e.* "painful temporary disfigurement…temporary loss…or impairment."  N.M.Stat.Ann. § 30-3-5(B).[3]  In addition, it excludes situations, incorporated in the felony offense, which involve a likelihood of "death or great bodily harm."  (*Id.*)  Moreover, there is no requirement for the use of a weapon or any other means of death or great bodily harm.  Thus, this level does not meet the UCR's definition of aggravated assault.  Rather, it fits under the definition of simple assault involving something less than serious injury to the victim.

Finally, the felony level is defined as:

> Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M.Stat.Ann. § 30-3-5(C).[4]  Thus, to qualify as a felony, an aggravated battery must involve one of three things: great bodily harm, a deadly weapon, or a risk of great bodily harm or death. Again, there is no heightened intent requirement.  Rather, the focus is on the result ("great bodily harm") or the means of commission ("a deadly weapon or a

---

[1] New Mexico has a separate offense of "aggravated assault." N.M. Stat. Ann. § 30-3-2.
[2] This type of offense would constitute a "petty misdemeanor," *see* N.M.Stat.Ann. § 31-18-13 (establishing default classifications), which would be punishable by less than 6 months in jail, and/or a fine of $500, N.M.Stat.Ann. § 31-19-1(B).
[3] Misemeanor aggravated battery is punishable by less than 12 months and/or a fine of $1,000. N.M.Stat.Ann. § 31-19-1(A).
[4] A first offense third degree felony is punishable by three years imprisonment. N.M.Stat. Ann. 31-18-15(A)(9).

manner…"). Thus, under the language of the UCR, even this level of aggravated battery would not qualify as aggravated assault. At best, it would fit within the accompanying fact patterns identified in the UCR's definition, *i.e.* the use of a deadly weapon or other means of great bodily harm.

Therefore, if presented with the question for review, it appears this Court would have to conclude that the BOP got it wrong in finding Petitioner had been convicted of aggravated assault as defined in the UCR.

**<u>Error Beyond Limited Jurisdiction</u>** - However, this Court is limited to reviewing for violations of the statute and regulations, and not to rethinking the BOP's decisions. And, the FBI's UCR's definition of aggravated assault is not part of the statute, nor is it part of the regulations.

The only reference found in the regulations or program statements to the FBI's reporting was in the BOP's supplementary information provided in the 1995 proposal for adoption of 28 C.F.R. § 550.58 (now 28 C.F.R. § 550.55[5]).

> Because state convictions may show a considerable range in the degree of violence used in the offense, the Bureau has chosen to use the above cited categories of crimes, which are reported under the FBI Violent Crime Index, as the sole determinant of violence in the criminal history

Drug Abuse Treatment Programs: Early Release Consideration, 60 Fed.Reg. 27692-01 (1995). (The FBI's Violent Crime Index is a subset of crimes reported on under the FBI'S UCR.) The regulation itself did not reference any FBI documents, but instead simply provided a generic list of "homicide, forcible rape, robbery or aggravated assault." 60 Fed.Reg. 27692-01. Indeed, the regulation still provides only a generic list without any reference to governing definitions.

Moreover, even this commentary did not adopt the FBI's Violent Crime Index (much less its definitions) as the standard, but merely noted that the categories of crime it had selected are the same as that in the FBI's index.

Nor is the UCR or its Violent Crime Index part of BOP's Program Statement

---

[5] *See* 69 Fed.Reg. 39887-02 (2004).

5331.02,[6] which effectuates the early release regulations. Even so, inclusion of the definition in a Program Statement would do little to benefit Petitioner. "A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011).

It is true that in rejecting Petitioner's Regional Appeal in his first round of administrative appeals, the Regional Director referenced the UCR:

> In determining if a prior state conviction satisfies the prohibitions listed in the regulation, the Bureau of Prisons will compare the relevant state statute to the FBI's Uniform Crime Reporting Program ("UCR"). This practice has been upheld by the courts. If the relevant state statute is substantially similar to the UCR definition, then the prior state conviction will be found to be precluding pursuant to the federal regulation.

(Exhibit 1, Attachment 4, Reg. Dir. Response 8/31/11.) That decision was subsequently reiterated by the Regional Director in his rejection of Petitioner's second appeal. (Exhibit 1, Attachment 5, Reg. Dir. Response 7/18/12.) However, the Regional Director's actual reliance upon the FBI's definitions does not create a legal mandate for such reliance.

Here, Petitioner was convicted of touching someone with an intent to injure, in fact causing injury (albeit not "great bodily injury"). The undersigned cannot say that the BOP acted contrary to the statute in exercising discretion to deny him early release as a result of those actions. Such an offense does indeed involve a purposeful, violent assault.

Nor can the undersigned find that those actions would not qualify as an "aggravated assault," so as to place Petitioner outside the regulatory standard of what constitutes a violent assault under 28 C.F.R. § 550.55. Aggravated assault is not a universal term. "The term 'aggravated assault' has no technical and definite common-law meaning." 6A C.J.S. Assault § 86. It can involve reckless or intentional injuries, actual injuries or mere apprehension of injuries, weapons or not, special victims or not.

---

[6] Available at http://www.bop.gov/policy/progstat/5331_002.pdf, last accessed 6/21/13.

6 Am. Jur. 2d Assault and Battery § 32.

For example, under the United States Sentencing Guidelines, a felonious assault is considered an "aggravated assault" if it simply involves "serious bodily injury." U.S.S.G. § 2A2.2 Application Note 1. "'Serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty." U.S.S.G. § 1B1.1, Application Note 1(L). But for New Mexico's limitation of misdemeanor aggravated battery to a six month jail term, it would fit within the Guidelines' definition of aggravated assault. Conversely, 18 U.S.C. § 113 makes an assault in a maritime or territorial jurisdiction resulting in "serious bodily injury" punishable by ten years in prison, making it felonious assault. Assuming that temporary and protracted (as opposed to permanent) are not exclusive terms, the offense committed by Petitioner in New Mexico, if committed in a maritime or territorial jurisdiction, would be an aggravated assault under the sentencing guidelines.

The qualification of the offense under 28 C.F.R. § 550.55 is even greater, because the regulation excludes prisoners with aggravated assault convictions that were not only felonies, but also misdemeanors. 28 C.F.R. § 550.55(b)(4).

Thus, this Court cannot say that the BOP's determination that Petitioner had been convicted of an "aggravated assault" was a violation of federal law, even if it was contrary to the FBI's definition of such a crime.

**Summary** – Review of Petitioner's claim under 18 U.S.C. § 3621(e) is limited to a review for violations of the law and constitutional violations. Despite the apparent error in comparing Petitioner's New Mexico Conviction with the UCR definition of aggravate assault, Petitioner has failed to show a violation of statutory law, regulation, or even BOP Program statement.

### B. EQUAL PROTECTION

As noted above, this Court also retains jurisdiction over claims that the BOP has violated the constitution. Petitioner argues that his exclusion from the early release

program was a denial of equal protection. Petitioner reasons that he is a nonviolent offender, and every other nonviolent offender completing the drug abuse program is granted early release. (Petition, Doc. 1 at 4A.)

An equal protection violation requires the petitioner to show that similarly situated people are being treated differently. *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir.1999). Petitioner does not present any facts demonstrating that he was treated differently from others who were similarly situated to him, because Petitioner has failed to demonstrate that he was a nonviolent offender. As discussed above, Petitioner's offense not only was a violent offense, but fits within the regulatory exclusion of aggravated assault.

If Petitioner could show, for example, that other prisoners with convictions under New Mexico's misdemeanor aggravated battery statute were being granted early release, then he would establish the requisite disparate treatment. He, of course, has not done so.

Accordingly, his equal protection claim is without merit.

## C. SUMMARY

This Court's review of the BOP's discretionary decision to deny early release under 18 U.S.C. § 3621(e) is limited to violations of federal law, constitutional violations, and actions in excess of statutory authority. Petitioner attempts but fails to show a violation of law and the Equal Protection clause of the Constitution. Accordingly, his Petition must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." However, such certificates are only required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. §

2253(c)(1). This case arises under 28 U.S.C. § 2241, and does not attack a State court detention. Accordingly, no ruling on a certificate of appealability is required, and no recommendation thereon will be offered.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed April 19, 2012 (Doc. 1) be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: June 24, 2013

12-0817r RR 13 06 19 on HC.docx

James F. Metcalf
United States Magistrate Judge